# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:05CR00068 |
| v. ) | **OPINION** |
| ) | |
| **DON JUSTUS**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Don Justus, Pro Se Defendant.*

The defendant, a federal inmate, has filed a Petition for a Writ of Error Coram Nobis, in which he contends that he is entitled to have his conviction under 18 U.S.C.A. § 924(c) (West Supp. 2009) vacated, because after the decision in *Watson v. United States*, 552 U.S. 74 (2007), the conduct for which he was convicted no longer qualifies as a criminal act. In *Watson*, the Supreme Court held that "a person does not 'use' a firearm under § 924(c)(1)(A) when he receives it in trade for drugs." 552 U.S. at 83. Upon review of the record, I find that coram nobis relief is not warranted on the facts of this case.

I

Don Justus pleaded guilty before this court on March 23, 2006, to one count of violating § 924(c) pursuant to a written Plea Agreement. On June 8, 2006, I sentenced him to sixty months of imprisonment. Justus did not appeal.

On December 14, 2009, Justus filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C.A. § 2241 (West 2006), in the United States District Court for the Eastern District of Kentucky, the district in which he was then incarcerated.[1] That court reviewed the petition and held that 28 U.S.C.A. § 2255 (West Supp. 2009) was an inadequate and ineffective remedy to collaterally attack the conviction and that accordingly Justus would be permitted to pursue a claim under § 2241. *Justus v. Cauley*, No. 0:09-CV-00106-HRW, 2010 WL 369310 (E.D. Ky. Feb. 1, 2010) (citing *Short v. Shultz*, No. 7:08CV00057, 2008 WL 1984262 (W.D. Va. May 6, 2008), *aff'd*, 298 F. App'x 246 (4th Cir. 2008) (unpublished), *cert. denied*, 129 S. Ct. 1376 (2009)).

Rather than consider whether the facts required vacating the § 924(c) conviction imposed by this court, the Kentucky court transferred the case to this

---

[1] At the time he submitted his petition, Justus was incarcerated at the Federal Prison Camp in Ashland, Kentucky.

- 2 -

district. *See* 28 U.S.C.A. § 1404(a) (West 2006) (permitting transfer to court where the case might have originally been brought).

This court held that it could not address Justus' *Watson* claim under § 2241, because the court did not have personal jurisdiction over his custodian. *See Lee v. Wetzel*, 244 F.3d 370, 373-74 (5th Cir. 2001) (holding that the district of sentencing does not have jurisdiction to consider the merits of a § 2241 petition unless the petitioner or his custodian is also located there).[2]

Instead of transferring or dismissing the petition for lack of jurisdiction, this court exercised its authority under the All Writs Act, 28 U.S.C.A. § 1651(a) (West 2006), to construe the petition as one seeking a writ of error coram nobis. *See United States v. Morgan*, 346 U.S. 502, 506-11 (1954). To establish that he is entitled to a writ of error coram nobis, Justus must prove that an error "'of the most fundamental character'" has occurred and that no other remedy is available. *Id.* at 512 (citation omitted). This court found that the actual innocence argument Justus raises under the *Watson* decision invokes a fundamental error that may warrant coram nobis relief and that Justus has no other remedy available by which to seek redress of his claim.[3]

---

[2] Presently, Justus is incarcerated in Butner, North Carolina, within the jurisdiction of the Eastern District of North Carolina. *See* 28 U.S.C.A. § 113 (a) (West 2006).

[3] A petition seeking a writ of error coram nobis "is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a

II

Coram nobis was "traditionally available only to bring before the court factual errors material to the validity and regularity of the legal proceeding itself, such as the defendant's being under age or having died before the verdict." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (internal quotation omitted). The United States Court of Appeals for the Fourth Circuit has recognized that coram nobis relief may be appropriate when the law has changed such that the defendant's offense conduct is no longer considered a crime under the statute of conviction. *See United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988) (granting writ of error coram nobis in light of retroactive dispositive change in law that allowed defendants' convictions for acts not within the reach of the statute under which they were charged); *see also United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989) ("Use of the writ is appropriate to correct errors for which there was no remedy available at the time of trial and where sound reasons exist for failing to seek relief earlier.") (internal quotation omitted). As in any post-conviction proceeding, the court must presume in a coram nobis action that the underlying criminal proceedings were correct, and the

---

separate civil Proceeding." *Morgan,* 346 U.S. at 506 n.4. Accordingly, this court issued an order directing that Justus' pleading be docketed in Justus' original criminal case.

petitioner bears the burden to show otherwise. *Morgan*, 346 U.S. at 512 (citing *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)).

Most importantly, the extraordinary remedy of coram nobis should issue "only under circumstances compelling such action to achieve justice." *Id.* at 511. Given the other prerequisites for consideration of a coram nobis claim, if the court determines that the defendant's conduct cannot support his conviction for the crime charged in the indictment, relief may be appropriate. *Mandel*, 862 F.2d at 1075.

I find instructive the manner in which arguments of actual innocence are considered in the context of procedural default to prevent or correct a miscarriage of justice. To prove actual innocence so as to circumvent procedural default, the defendant must demonstrate that, in light of all the evidence, including evidence not presented or even admissible at trial, no reasonable juror would find the defendant guilty of the offense charged. *Schlup v. Delo*, 513 U.S. 298, 329 (1995). In the procedural default context, the defendant must also demonstrate not only innocence of the count to which he pleaded guilty, but also his innocence of the counts dismissed in exchange for his guilty plea. *See Bousley v. United States*, 523 U.S. 614, 624 (1998).

Justus argues that he is actually innocent of violating § 924(c) as defined in *Watson*, 552 U.S. 74. In predecessor decisions to *Watson*, the Supreme Court

addressed the meaning of "use" in § 924(c). In *Bailey v. United States*, 516 U.S. 137, 143 (1995), it held that simply possessing a firearm did not constitute "use" under § 924(c), and in *Smith v. United States*, 508 U.S. 223, 241 (1993), the Court held that the trading of a gun for drugs—the reverse of the present situation—was encompassed by the word "use" in the statute. In response to *Bailey*, Congress added the "possession" prong to § 924(c), so that it now penalizes a person "who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C.A. § 924(c)(1)(A). Thus, the statute now creates distinct "use and carry" and "possession" offenses. *See United States v. Gamboa*, 439 F.3d 796, 810 (8th Cir. 2006).

The Court in *Watson* extended the *Smith* definition logically to hold that an individual who receives a firearm in exchange for drugs does not "use" that firearm within the meaning of the term as presented in § 924(c). 552 U.S. at 83. Although recognizing the government's argument in *Watson* that "a drug dealer who takes a firearm in exchange for his drugs generally will be subject to prosecution" under the "possession prong" of § 924(c)(1)(A), the Court expressly stated that "[t]his view may or may not prevail, and we do not speak to it today." *Id.*

The Fourth Circuit reads "furtherance" in § 924(c)(1)(A) according to its plain meaning of "'the act of furthering, advancing, or helping forward'" the defendant's

drug crime.[4] *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002) (citation omitted). Factors to consider in determining whether a sufficient connection existed between a defendant's possession of a firearm and his drug trafficking include, but are not limited to:

> "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found".

*Id.* (citation omitted). Courts have recognized many common sense theories of connection that the government may advance for the use of firearms in drug trafficking crimes, including providing a defense against theft and reducing chances of robbery of drugs or proceeds, assisting the dealer in collecting payment for drugs, serving as protection if a drug deal goes bad, preventing a drug deal from failing, and defending the dealer's turf from other dealers. *Id.*

---

[4] In *United States v. Woods*, 271 F. App'x 338 (4th Cir. 2008) (unpublished), the Fourth Circuit spoke to the "possession" issue raised in *Watson*. The Court held that Woods, who was charged under § 924(c) with possession of a firearm, and not use, "obviously 'possessed' firearms, under any meaning of that term, when he obtained them in the course of his drugs-for-guns business." *Id.* at 346. A witness testified that he had traded certain firearms to Woods for drugs, and the government presented evidence that those same firearms had been seized from Woods' father's residence. Accordingly, the court rejected Woods' claim that there was insufficient evidence to support his § 924(c) convictions for "possession of a firearm." *Id.* The opinion in Woods was designated by the court to be without precedential force and accordingly I am not bound by it and must determine the issue independently.

Justus claims that because the government had no evidence that he used a firearm during the drug trafficking offense with which he was charged, he is actually innocent of the § 924(c) offense and his conviction must be vacated. To resolve this claim, I must review the record in more detail.

The Indictment in this case charged that Justus knowingly distributed oxycodone, in violation of 21 U.S.C.A. § 841(a)(1) (West 1999 & Supp. 2009) (Count One) and that he "knowingly used and carried during and in relation to, and possessed in furtherance of, a drug trafficking crime . . . a firearm," in violation of § 924(c) (Count Two). Paragraph 1 of the Plea Agreement reads, in part:

> I will enter a plea of guilty to Count Two of the Indictment, charging me with knowingly using and carrying a firearm during and in relation to the furtherance of a drug trafficking crime in violation of [§ 924(c)].

At the plea hearing on March 23, 2006, the prosecutor began a review of the Plea Agreement terms as follows:

> Mr. Justus, you have entered into a plea agreement with the United States. As a condition of that plea agreement you will be entering a plea of guilty to count two of the indictment charging you with knowingly using and carrying a firearm during and in relation to the furtherance of a drug trafficking crime in violation of [18 U.S.C.A. §] 924(c).

(Plea Tr. 8-9, Mar. 23, 2006.) Later, the court also reviewed the elements of the count to which Justus was pleading guilty:

>THE COURT: Now, let me go over with you, Mr. Justus, the charge to which you wish to plead guilty. Count two of the indictment charges that on or about August 4, 2005 that you knowingly used and carried during and in relation to and possessed in furtherance of a drug trafficking crime as described in count one of the indictment, a firearm.
>
>This is what's called a 924(c) crime, and if the case went to trial on this charge the Government would be required to prove beyond a reasonable doubt that you used or carried a firearm in relation to a drug trafficking crime. This means that you actively employed the firearm while committing the offense.
>
>As an alternative, the Government would be required to prove beyond a reasonable doubt that you knowingly possessed the firearm, meaning that you knew that you had a firearm, and that that possession furthered a drug trafficking crime. This means that the firearm helped further or advance the drug trafficking crime.
>
>Possession with intent to distribute oxycodone is a drug trafficking crime. It's important that you understand that mere possession of a firearm is not sufficient to convict you of this crime. The Government would have to show more than that. Do you understand what the Government would have to prove to find you guilty of this crime?
>
>MR. JUSTUS: Yes.
>
>THE COURT: And are you pleading guilty because you are, in fact, guilty of this crime?
>
>MR. JUSTUS: Yes.

(*Id.* 18-19.) The prosecutor then reviewed the facts that the government would have been prepared to prove if the case had gone to trial:

- 9 -

>       Your Honor, if called upon to do so the Government would present evidence to prove the defendant guilty beyond a reasonable doubt. Some of that evidence would include the defendant was caught in a reverse sting by the Buchanan County Narcotics Task Force using a confidential informants on August 5, 2005 in Buchanan County. The defendant traded $6,100 cash for placebo OxyContins. Subsequent to that transfer consent to search the defendant's business where the deal had taken place yielded the placebo narcotics as well as several long guns and a derringer that was located in the cash register. In the cash register were also seven OxyContin 80-milligram pills. The defendant was Mirandized and subsequent to that warning admitted the firearms found at the location were, in fact, his.

(*Id.* 19.) Justus indicated that he understood the provision of his Plea Agreement whereby he waived his right to appeal and his right to collaterally attack the judgment or sentence.[5] I found that Justus was fully competent and was entering a knowing and voluntary plea of guilty supported by the facts, accepted the plea, and adjudged him guilty.

---

[5] Justus' Plea Agreement reads:

> I agree not to collaterally attack the judgment and/or sentence imposed in this case and waive my right to collaterally attack, pursuant to [§ 2255] the judgment and any part of the sentence imposed upon me by the Court. **I agree and understand that if I file any court document seeking to disturb, in any way, the judgment and/or sentence imposed in my case, the United States will be free to take whatever actions it wishes based on this failure to comply with my obligations under the plea agreement.**

(Plea Agreement ¶ 9) (emphasis in original).) Because I find that Justus is not entitled to coram nobis relief, I do not address whether the Plea Agreement waiver provision might be enforceable as an alternative ground for dismissal of his petition.

In an affidavit attached to his current pleading, Justus alleges the following sequence of events on which he claims actual innocence of the § 924(c) offense. Justus and his mother ran a general store. To make ends meet, he opened a small game room and pawn shop in a room next to the store. In this room, he "also sold illicit oxycodone to known customers."[6] (Justus Aff. ¶ 1, Dec. 14, 2009.) One of his former customers cooperated with police and sold 150 oxycodone pills to Justus for $6,100 in cash while wearing a wire.[7] After the buy, armed agents raided the store,

---

[6] The Presentence Investigation Report ("PSR") prepared in this case also recites evidence of the extent of Justus's drug trafficking activities:

> The defendant was interviewed and stated that he had been obtaining pills from an unindicted individual in Buchanan County, Virginia, for approximately eight months. From that individual, he had bought thirty to forty 80 milligram pills on three or four occasions. Mr. Justus advised that he had used a 10 milligram Percocet for which he did not have a prescription the night before, and that he sold one-half of a 10 milligram Percocet earlier that day. He stated that he had been selling Tylox, Percocet, and Lortab for approximately four to five years. Mr. Justus stated he had approximately ten people from whom he buys their prescriptions each month. He further stated that during that time period, he occasionally sold marijuana as well. A search of Mr. Justus' residence was also conducted, and agents found a Colt, model 1991 A-1, .45 caliber pistol, serial number 2802625.
>
> Of the nine firearms, the Freedom Arms, .22 caliber revolver, and the Colt, model 1991 A-1, 45 caliber pistol were found to have traveled in foreign or interstate commerce. On August 5, 2005, ATF agents test fired both weapons, and they were found to be in operable condition.

(PSR ¶¶ 7 & 8.)

[7] Justus claims that he conducted the purchase in a bathroom, out of sight of other customers, and not in the room where the cash register was located. (*Id.* at ¶ 2.)

arrested Justus, and seized much of the pawn shop's inventory, including several firearms. Justus explains:

> One of the items of pawned inventory [seized by the agents] was a .22 caliber derringer style pistol. This derringer had been pawned and redeemed several times by a single owner to secure payment for small quantities of oxycodone pills (usually less than 20). Because of its small size and near certainty of redemption, the derringer was held in the cash register where I also kept car titles, jewelry and similar items of inventory.

(*Id.*)

It is clear that Justus's receipt of the pistol in exchange for drugs does not qualify as "use" of the firearm during and in relation to the drug transaction under the *Watson* definition, because he did not actively employ the firearm during the transaction.[8] Unlike the defendant in the *Watson* case, however, Justus was charged not only with use of a firearm, but also with possession of a firearm in furtherance of a drug offense. From all the evidence, including the PSR and Justus' current allegations, I find that Justus' conduct satisfies the elements of a possession offense under § 924(c) and that he pleaded guilty to such a charge.

---

[8] The words "use" and "carry" denote different conduct, *see Bailey*, 516 U.S. at 507, but particularly after *Watson*, it cannot be argued that Justus's receipt of the firearm was included within the statutory meaning of "carry" since Justus did not carry the firearm, if at all, until after the drug transaction was completed.

Reflecting the undeveloped understanding of the § 924(c)'s two-pronged proof scheme, the parties entered into a Plea Agreement describing Justus' offense in Count Two as "knowingly using and carrying a firearm during and in relation to the furtherance of a drug trafficking crime in violation of [§ 924(c)]." The prosecutor echoed this language in describing the terms of the agreement. Despite these discrepancies, however, the Indictment itself and the plea colloquy as a whole clearly notified Justus that he was charged with, and was pleading guilty to, possession of the firearm in furtherance of a drug crime, and the Judgment itself indicates that he was convicted of a possession offense under § 924(c).

Before accepting Justus' guilty plea, I explained in detail what the government would have to prove at trial in order to obtain a conviction for possession of the firearm in violation of § 924(c). Immediately thereafter, Justus affirmed that he understood these elements and that he was pleading guilty to that charge because he was, in fact, guilty. Moreover, the evidence offered in support of the guilty plea supported only a finding of possession of a firearm in furtherance of drug trafficking. The government's proffer did not include any evidence about how Justus obtained the derringer in trade for drugs or suggesting that he used or carried it with him while

distributing drugs. Justus could only have understood that he was pleading guilty to possession in furtherance of a drug trafficking offense.[9]

Furthermore, a reasonable fact finder could find from all the evidence, including the gun-for-drugs trade, that Justus' conduct constituted a possession violation of § 924(c). It is reasonable to infer that Justus kept the derringer in the cash drawer with drugs for sale, within easy access, in order to protect both the product and the proceeds of his ongoing drug trafficking activities in the pawn shop. Similarly, the fact finder could reasonably infer that his receipt of cash in exchange for the pawned firearm facilitated his drug trafficking by providing him with funds to buy more pills. Thus, the fact that the purchase of drugs from the confidential informant did not occur in the vicinity of the firearm does not preclude a reasonable inference that he possessed the firearm in furtherance of illegal drug activities in violation of § 924(c).

On these facts, I cannot find that Justus has carried his burden to prove that the *Watson* opinion's clarification of the term "use" of a firearm for purposes of § 924(c) has rendered his conviction so fundamentally flawed as to warrant the relief he seeks.

---

[9] In the *Woods* case, the Fourth Circuit held that similar mischaracterzation of the offense being charged under § 924(c), at trial and in jury instructions, did not constructively amend the indictment, where none of the mischaracterization changed the elements of the offense charged to the extent that the defendant was convicted of a crime not charged in the indictment. 271 F. App'x at 344-45.

Justus was charged with possession and understood the elements of that offense under § 924(c) when he stated under oath that he was guilty of that offense. Because Justus' actions qualify as criminal conduct under the possession prong of § 924(c), his claim that he is actually innocent of a § 924(c) violation fails. Thus, I cannot find that the circumstances in his case "compel" the issuance of the extraordinary remedy of coram nobis in order "to achieve justice." *Morgan*, 346 U.S. at 511.

### III

For these reasons, I find no ground upon which the defendant is entitled to coram nobis relief. Accordingly, his petition will be dismissed.

A separate Final Order will be entered herewith.

DATED: April 5, 2010

/s/ JAMES P. JONES
Chief United States District Judge